UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BONNIE GILBERT, DAVID GATZ, WENDY BRYAN, LORI GRADER, DARYL SWANSON, PATRICIA WHITE, ALICIA DUNN, CRYSTAL HULLETT and STEPHEN GABBARD,**

   **Plaintiffs,**

v.                                                                    Case No: 6:21-cv-2158-RBD-DCI

**BIOPLUS SPECIALTY PHARMACY SERVICES, LLC,**

   **Defendant.**

## ORDER

This cause comes before the Court for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 68)** |
| **FILED:** | **July 1, 2023** |
| **THEREON** it is **ORDERED** that ruling on the motion is **DEFERRED**. | |

### I.   Background

In the operative Complaint, the named Plaintiffs bring various claims, including a claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), individually and on behalf of those similarly situated. Doc. 60 (the Complaint). The named Plaintiffs allege that Defendant, a national specialty pharmacy, failed to adequately protect sensitive information including names, dates of birth, addresses, and social security numbers. *Id.* The named Plaintiffs claim that

Defendant experienced a data incident between October 25, 2021 and November 11, 2021, during which an unauthorized third party gained access to its network. *Id*. (the Data Incident).

The parties litigated the case for approximately two years, engaged in discovery, filed dispositive motions, and eventually reached settlement.[1] As such, the parties filed a Joint Notice of Settlement, and the Court administratively closed the case and directed the parties to file a motion for preliminary approval of proposed class settlement. Docs. 64, 65. Pending before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement. Doc. 68 (the Motion).

For the reasons stated herein, ruling on the Motion is deferred pending additional briefing.

### A. The Motion

On April 26, 2023, the parties filed a Notice of Settlement and stated that they have reached a class-wide settlement. Doc. 64. The named Plaintiffs now move for class certification and preliminary approval of the class action settlement and have attached the Settlement Agreement (the Agreement), notices of settlement to class members, and declarations in support of the request. Docs. 68; 68-1 to 68-3. The named Plaintiffs certify that Defendant does not oppose the Motion and Defendant has not filed a response and the time for doing so has elapsed.

As such, the named Plaintiffs make an unopposed request for the Court to: (1) certify the settlement class pursuant to Federal Rule of Civil Procedure 23(b)(3); (2) preliminarily approve

---

[1] On March 3, 2023, the Court granted in part and denied in part Defendant's motion to dismiss. Doc. 59. In doing so, the Court permitted the negligence, breach of implied contract, and declaratory judgement claims to proceed without amendment and granted the named Plaintiffs leave to amend their state consumer protection claims. *Id*. However, the Court dismissed the negligence per se, breach of fiduciary duty, and breach of express contract claims. *Id*. The named Plaintiffs subsequently filed the Complaint and assert claims for (1) negligence, (2) breach of implied contract, (3) FDUTPA violations, and (4) seek declaratory judgment. Doc. 60. On April 5, 2023, Defendant filed a motion to dismiss the FDUTPA claim but the parties reached settlement before the Court ruled. Docs. 60, 64.

the settlement; (3) appoint the proposed class representatives, class counsel, and settlement administrator; (4) approve the notice plan; and (5) approve a schedule leading up to a final approval hearing.

### B. The Settlement Agreement

Plaintiffs propose the following "Settlement Class":

> all persons who were notified that their information may have been impacted in the Data Incident. The Settlement Class specifically excludes: (i) BioPlus and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contender* to any such charge.

Doc. 68-1 at 13.

While the Settlement Agreement defines "Settlement Class" in this regard, the named Plaintiffs further divide the class into two groups. Plaintiffs do not call the groups "sub-classes" but in essence the Settlement Agreement provides for two categories of individuals who are treated differently. Plaintiffs identify the first group as "Claims-Made Settlement Class Members" or "Non-SSN Class Members" who include:

> approximately 218,750 Settlement Class Members who were notified that their information may have been impacted in the Data Incident, and whose Social Security numbers were not impacted in the Data Incident. The Claims-Made Settlement Class Members are eligible to submit a claim under the Claims-Made Benefits.

*Id*. at 7. A separate settlement fund for this group is described as follows:

> The Settlement benefits. . . available to the Claims-Made Settlement Class Members. The Claims-Made Benefits will be funded by BioPlus in an amount not to exceed $1,175,000, inclusive of (i) all Valid Claims for Settlement benefits made under ¶ 2.1; (ii) reasonable Notice and Settlement Administration Costs (defined below) incurred in the administration of both Claims-Made and Common Fund Benefits, including all taxes owed by the Claims-Made Benefits and Common Fund; and (iii) any attorneys' fees, costs, and expenses, as approved by the Court.

*Id*. at 6-7. The named Plaintiffs explain that through this reversionary fund, Defendant will pay approved fees, costs, and expenses, and from the remaining fund, the Non-SSN Settlement Class Members are permitted to claim (1) compensation of $25 per hour for up to two hours of time spent dealing with issues related to the Data Incident and (2) reimbursement of documented out of pocket expenses or losses up to $750. *Id*. at 6. Following the payment of attorneys' fees and expenses, settlement administration expenses, and claims made by Non-SSN Class Members, any funds remaining under the $1,175,000 cap will revert to Defendant. *Id*.

The named Plaintiffs then identify the second group as "Common-Fund Settlement Class Members" or "SSN Class Members" who include:

> approximately 130,438 Settlement Class Members who were notified of the Data Incident and who were notified that their Social Security numbers may have been impacted in the Data Incident. Common-Fund Settlement Class Members are eligible to submit a claim under the Common Fund.

Doc. 68-1 at 7-8. The "Common Fund" or "SSN Settlement Fund" is defined as "a non-reversionary common fund to be funded by BioPlus in the amount of $1,025,000." *Id*. at 7. Plaintiffs explain that Defendant has agreed to create this non-reversionary fund and SSN Class Members will be able to claim (1) compensation of $25 per hour for up to three hours of time spent dealing with issues related to the Data Incident; (2) reimbursement of documented out of pocket expenses or losses up to $7,500; and (3) a pro rata distribution of funds remaining fund. Doc. 68 at 6.

## II.    Law

The Court does not reach the issue of preliminary settlement approval because there are deficiencies with the named Plaintiffs' request for certification of class for the purpose of settlement. "A class may be certified solely for purposes of settlement where a settlement is

reached before a litigated determination of the class certification issue." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (internal quotation marks omitted). A party seeking to certify a class action — be it contested or not — bears the burden of demonstrating that: 1) the named plaintiffs have standing to raise each class claim, *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000); 2) the proposed class is adequately defined and clearly ascertainable, *Carriuolo v. Gen. Motors, Co.*, 823 F.3d 977, 984 (11th Cir. 2016); 3) the putative class meets the numerosity, commonality, typicality, and adequacy of representation requirements set forth in Federal Rule of Civil Procedure 23(a), *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187–88 (11th Cir. 2003); and 4) the putative class meets at least one of the three requirements set forth in Federal Rule of Civil Procedure 23(b), *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000).

### III. Discussion

#### A. Standing

Even though the Motion is unopposed, the Court must still find that the named Plaintiffs have standing. *See Morris v. United States Foods, Inc.*, 2021 WL 2954741, at *3 (M.D. Fla. May 17, 2021), *report and recommendation adopted by*, 2021 WL 6125575 (M.D. Fla. July 14, 2021) ("Even when the parties agree to class certification, however, the Court must still conduct a multi-pronged inquiry as to whether the class is certifiable."). To establish Article III standing, a plaintiff must show that: (1) he suffered an injury in fact; (2) the injury at issue is fairly traceable to the defendant's alleged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). "To have standing to represent a class, a party must not only satisfy the individual standing prerequisites but must also 'be part of the class and possess the same interest and suffer the same injury as the class members." *Mills v.*

*Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008) (quoting *Prado-Steiman*, 221 F.3d at 1279).

Here, Plaintiffs have not established standing because they have not addressed it. The failure to discuss standing is problematic because the class includes all persons notified that their information *may* have been impacted in the Data Incident. The Court does not conclude that a potential impact from a security breach is not an injury in fact, but the Court will make no assumptions.

Further, an analysis on this issue seems especially important because of the differential treatment of class members (i.e., class members whose social security numbers may have been impacted in the Data Incident versus those who did not suffer that potential impact). That is not to say that the law views the potential impact to social security numbers differently, but Plaintiffs need to show a harm.

Finally, at first blush it appears that the named Plaintiffs possess the same interest and suffered the same injury as the putative class as defined in the Settlement Agreement. However, that assumption might be misguided because it is not clear if the named Plaintiffs consist of both Non-SSN Class Members and SSN Class Members or if they all fall into only one of these groups.[2] The distinction may not be dispositive for purposes of standing, but the Court is not inclined to grant relief without clarification of the named Plaintiffs' alleged injuries compared to that of the purported class members—potentially in a different group—and legal authority on the issue.

---

[2] Of the nine named Plaintiffs in the Complaint, eight allegedly received letters stating that unauthorized actors gained access to Defendant's network containing their social security numbers. Doc. 60 at 8-12. The remaining named Plaintiff, Plaintiff Hullet, allegedly received notice that unauthorized actors accessed Defendant's network containing "Sensitive Information." *Id.* at 10. The Court will not guess what that term encompasses but it appears that social security numbers are included. *See id*. at 15.

In sum, since the named Plaintiffs do not mention standing, there is no legal basis to support such a finding and the Court requires supplemental briefing.

### B. Rule 23(a) Requirements

Turning to Rule 23(a), the Court finds that the named Plaintiffs did not adequately discuss typicality or adequacy of representation. As an initial matter, with respect to typicality, the named Plaintiffs' conclusory statement that the claims are typical of other class members "because they are based on the same legal theories and underlying events" does not help the Court in determining if relief is warranted. The named Plaintiffs have the burden to show that the claims are typical of the claims of the settlement class and their say so without an analysis is insufficient.

Further, the Court has concerns regarding the existence of typicality for the same reason it questions standing. For typicality purposes, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Again, Plaintiffs draw a distinction between class members with respect to the type of claim for payment and entitlement to reimbursement; the pro rata distribution of funds; the reversionary nature of the applicable fund; the nature of the notice; and the prospect of a reduction of an award for fees, costs, and expenses. The Court is unsure if there is a sufficient nexus between the named Plaintiffs' claims or defenses because there is no discussion regarding the group the named Plaintiffs fall into under the Settlement Agreement.

To be clear, even if all named Plaintiffs are in the SSN Class Member group it may be that their claims and defenses are still typical of the Non-SSN Class Members or vice versa, but the named Plaintiffs need to address that issue. In other words, the distinction between the class

members may be entirely permissible and a non-event for typicality purposes, but the named Plaintiffs failure to provide any analysis on typicality in general leaves the Court guessing.

Likewise, the Court requires additional clarification on the adequacy of representation. Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Supreme Court has stated that the "adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citations omitted). The adequacy requirement, therefore, "encompasses two separate inquiries: 1) whether any substantial conflicts of interest exist between the representatives and the class; and 2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

The named Plaintiffs provide authority on the adequacy requirement, but their entire analysis is "[h]ere, Plaintiffs have no conflicts with the Settlement Class and have actively participated in this case despite not receiving any special treatment." Doc. 68 at 12, citing Terence R. Coates' declaration Doc. 68-2 at ¶ 14. That paragraph sheds no further light on this blanket assertion, and without more it is not clear if potential conflicts exist between the named Plaintiffs and other putative class members especially in light of the distinction between the SSN and Non-SSA Class Members. As with Article III standing and typicality under Rule 23(a), the named Plaintiffs must clarify how they can adequately represent all class members with no substantial conflict.[3] The Court does not imply that the named Plaintiffs cannot, but they must adequately address the issue.

---

[3] The Court notes that the declarations attached to the Motion address the request to appoint class counsel and the settlement administration. *See* Doc. 68-2; 68-3.

### IV.   Conclusion

Based on the foregoing, it is **ORDERED** that:

1. ruling on the Motion (Doc. 68) is **DEFERRED**;[4] and

2. **on or before September 29, 2023**, the named Plaintiffs must file a supplemental brief of no more than ten pages to address the deficiencies identified in this Order or must withdraw the Motion and file a revised motion for the requested relief.

**The failure to comply with this Order within the allotted time may result in a recommendation that the Motion be denied**.

**ORDERED** in Orlando, Florida on September 14, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

---

[4] The deferral includes ruling on the named Plaintiffs' request for settlement approval, appointment of class counsel, approval of the notice, and request for final approval hearing schedule.

- 9 -