## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| BONNIE GILBERT, WENDY BRYAN, PATRICIA WHITE, DAVID GATZ, CRYSTAL HULLET, LORI GRADER, DARYL SWANSON, STEPHEN GABBARD, ALICIA DUNN, and on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>BIOPLUS SPECIALTY PHARMACY SERVICES, LLC,<br><br>    Defendant. | Case No. 6:21-cv-02158-RBD-DCI |

## PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Bonnie Gilbert, Wendy Bryan, Patricia White, David Gatz, Crystal Hullet, Lori Grader, Daryl Swanson, Stephen Gabbard, and Alicia Dunn (collectively, "Plaintiffs"), individually and on behalf of the Proposed Settlement Class ("Settlement Class Members" or "Settlement Class"), respectfully move for preliminary approval of class action settlement and preliminary certification of the Settlement Class ("Motion"). The Settlement Agreement ("S.A.") is filed herewith as **Exhibit 1**. The Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Decl.") is included as **Exhibit 2**. The Declaration of

1

Kroll Settlement Administration ("Kroll Decl.") is included as **Exhibit 3**. Unless otherwise stated, all definitions are the same as in the Settlement Agreement.

<u>**MEMORANDUM IN SUPPORT**</u>

## I.    INTRODUCTION

Plaintiffs and the proposed Class they seek to represent have reached a nationwide class action settlement with Defendant, BioPlus Specialty Pharmacy Services, LLC ("Defendant" or "BioPlus"), for a $1,025,000 non-reversionary common fund, and an additional $1,175,000 in the form of a reversionary fund, to resolve claims arising from the Data Security Incident taking place between October and November 2021 that impacted approximately 350,000 of its current and former patients and customers (the "Data Security Incident"). *See generally* S.A.; *see also* Coates Decl., ¶¶ 6-10.

The Settlement provides significant relief to Settlement Class Members and is within the range of reasonableness necessary for this Court to grant preliminary approval of the class action settlement under Rule 23(e). The Court should preliminarily approve the Settlement, direct notice to all Settlement Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' Motion for Final Approval and petition for attorneys' fees and expenses, and set a date for the Final Approval Hearing.

## II.    BACKGROUND

BioPlus is a national specialty pharmacy. Plaintiffs allege they are patients whose doctors and insurance providers shared their personally-

identifying information ("PII") and protected health information ("PHI") with BioPlus so Plaintiffs could use BioPlus's services. BioPlus experienced a data incident between October 25, 2021 and November 11, 2021 during which an unauthorized third party gained access to its network (the "Data Incident"). Plaintiffs allege that their PII and PHI were exposed as a result of the Data Incident. *See* ECF No. 60.

Plaintiffs allege that Defendant failed to adequately protect sensitive information about its patients and customers, including PII like names, dates of birth, addresses, and Social Security numbers, and PHI, including medical record numbers, current/former health plan member ID numbers, claims information, diagnosis and/or prescription medication information (collectively, "Private Information"). In total, BioPlus notified approximately 349,188 individuals who were impacted by the Data Incident, including 130,438 individuals whose Social Security numbers were impacted in the Data Incident. S.A. ¶¶ 1.7, 1.10.

### A. History of Litigation

Plaintiff Bonnie Gilbert initiated the first filed case against BioPlus on December 27, 2021. ECF No. 1. Thereafter, the Court consolidated this case with four other actions then-pending against BioPlus in this District. ECF No. 21. Plaintiffs' Consolidated Class Action Complaint was filed on March 28, 2022. ECF No. 27.

On March 3, 2023, the Court granted in part and denied in part BioPlus's motion to dismiss. ECF No. 59. In doing so, the Court permitted Plaintiffs'

negligence, breach of implied contract, and declaratory judgement claims to proceed without amendment and granted Plaintiffs leave to amend their state consumer protection claims. *See id.* However, the Court dismissed Plaintiffs' claims for negligence per se, breach of fiduciary duty, and breach of express contract. *See id.*

Plaintiffs subsequently filed a Third Amended Consolidated Class Action Complaint ("Complaint" or "Compl.") on March 17, 2023. ECF No. 60. The Complaint asserted claims of (1) negligence, (2) breach of implied contract, (3) violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and (4) declaratory judgment. On April 5, 2023, Defendant filed a motion seeking to dismiss Plaintiffs' claim under the FDUTPA. ECF No. 63. The Court has not had an opportunity to rule on that motion because on April 26, 2023, the parties filed a notice of settlement, ECF No. 64, and on April 27, 2023, the Court administratively closed this action, terminating all pending motions. ECF No. 65. The entry administratively closing this action ordered that Plaintiffs move for preliminary approval of the proposed class action settlement no later than June 26, 2023. *See id.* Thereafter, the Court granted the Parties' joint motion to extend the deadline for Plaintiffs to move for preliminary approval of the proposed class action settlement to June 30, 2023.  ECF No. 67.

### B. Negotiations and Settlement

The parties first attempted mediation on August 23, 2022 under the supervision of Rodney A. Max from Upchurch Watson White & Max Mediation

Group. ECF No. 46. However, the parties were unable to reach an agreement. *Id*. The parties returned to mediation on April 12, 2023. Coates Decl., ¶ 11. Following hours of hard bargaining on both sides, the parties reached the settlement in principle that is the subject of this motion for preliminary approval. *Id*.

### C. Summary of Settlement Terms

The Settlement Class is defined as "all persons who were notified that their information may have been impacted in the Data Incident." S.A. ¶ 1.30. The Settlement Class specifically excludes: (i) BioPlus and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads nolo contender to any such charge. *Id*.

BioPlus has agreed to create a non-reversionary common fund ("SSN Settlement Fund") in the amount of $1,025,000.00 to pay the claims of the approximately 130,438 Settlement Class Members who were notified of the Data Incident and who were notified that their Social Security numbers may have been impacted in the Data Incident ("SSN Class Members"). *Id*. ¶ 1.10. From the $1,025,000.00 SSN Settlement Fund, SSN Class Members will be able to claim (1) compensation of $25 per hour for up to three hours of time spent dealing with issues related to the Data Incident; (2) reimbursement of documented out of pocket expenses or losses up to $7,500; and (3) a pro rata distribution of funds

5

remaining in the SSN Settlement Fund (which is projected to be approximately $50 per SSN Class Member). *Id.* ¶ 2.2. The SSN Settlement Fund shall not be reduced by any award of costs, fees, or expenses, which shall be paid separately (subject to Court approval). *See id.* ¶ 1.6.

BioPlus has also agreed to create a reversionary settlement fund ("Non-SSN Settlement Fund") in the amount of $1,175,000 to settle claims of the approximately 218,750 Settlement Class Members who were notified that their information may have been impacted in the Data Incident, and whose Social Security numbers were not impacted in the Data Incident ("Non-SSN Class Members"). *Id.* ¶ 1.7. From the Non-SSN Settlement Fund, BioPlus will pay all approved attorneys' fees, costs, and expenses. *Id.* ¶ 2.1.3. From the remaining funds, Non-SSN Settlement Class Members are permitted to claim (1) compensation of $25 per hour for up to two hours of time spent dealing with issues related to the Data Incident and (2) reimbursement of documented out of pocket expenses or losses up to $750. *Id.* ¶ 2.1.2. Following the payment of attorneys' fees and expenses, settlement administration expenses, and claims made by Non-SSN Class Members, any funds remaining under the $1,175,000 cap will revert to Defendant. *See id.* ¶ 2.1.

### D. Scope of the Release

Plaintiffs and Settlement Class Members who do not opt-out of the settlement agree to release BioPlus and all of its agents, parents, subsidiaries, and affiliates from any liability "relating to, concerning or arising out of the Data

Incident and alleged theft of other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation." S.A. ¶ 1.24; *see also id.* ¶¶ 1.35, 7.1. This is a mutual release, with Defendant agreeing to release Plaintiffs and Settlement Class Members from claims related to this action as well. *Id.* ¶ 7.2.

### E. The Notice and Administration Plans

The Parties have agreed to provide notification to Settlement Class Members in the forms attached as Exhibits B-1, B-2, and C to the Settlement Agreement. S.A. ¶¶ 9.1-10.1. Dissemination of the settlement notice shall be the responsibility of the Settlement Administrator, Kroll, which shall provide notice both directly to Settlement Class Members and online at the dedicated settlement website where Settlement Class Members obtain important settlement information. *See id.* The costs of Settlement Administration shall be borne by BioPlus, made exclusively from the Non-SSN Settlement Fund. S.A. ¶ 1.6.

### F. Attorneys' Fees and Expenses

Plaintiffs have agreed to not request attorneys' fees in excess of $733,333.33, which represents one-third (1/3) of the combined maximum value of the Settlement Funds ($2,200,000). Coates Decl., ¶¶ 10, 16. Defendant has agreed that attorneys' fees, costs, expenses, and settlement administration fees, including without limitation the cost of Fed. R. Civ. P. 23 notice to the class and claims administration, will be paid from the amount allocated for the Non-SSN Class Member Fund. S.A. ¶ 2.1.3. Plaintiffs will file a separate motion for approval of

attorneys' fees, costs, expenses ahead of the Final Approval Hearing. Coates Decl., ¶ 16. Settlement Class Members will have an opportunity to review that motion and submit objections to Plaintiffs' requested fees and expenses before the final approval hearing. *See id.* ¶ 18; S.A. ¶ 5.

## III.    LEGAL STANDARD

Under Fed. R. Civ. P. 23(e), a class action may be settled only with court approval, which requires the court to find the settlement "fair, reasonable, and adequate." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021). Fed. R. Civ. P. 23(e) provides three steps for the approval of a proposed class action settlement: (1) the Court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement; and (3) a fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable, and adequate. *See generally* Fed. R. Civ. P. 23(e).

First, the Court should conduct a preliminary review to determine whether the proposed class settlement "is within the range of possible approval." *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted); *see also* MANUAL FOR COMPLEX LITIGATION (Third) § 30.41 (1995). This involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.* Plaintiffs request that the Court preliminarily approve the proposed Settlement, the first step in approving a class action settlement under Fed. R. Civ. P. 23(e).

During preliminary approval proceedings, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." Ann. Manual for Complex Litig. (Fourth) § 21.662 (2012). There is strong judicial and public policy favoring the voluntary resolution of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Generally, a large amount of discretion is afforded to courts in approving class action settlements. *See In re Equifax*, 999 F.3d at 1273.

## IV.    ARGUMENT

### A. All Plaintiffs and Class Members have Standing

On September 14, 2023, the Court requested clarification about whether Plaintiffs have standing. Order (ECF No. 69), at 7 ("In sum, since the named Plaintiffs do not mention standing, there is no legal basis to support such a finding and the Court requires supplemental briefing."). Standing exists when a plaintiff's sensitive personal information is allegedly accessed and exfiltrated in a data breach. *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 796367, at *4 (S.D. Fla. Mar. 15, 2022) (acknowledging that standing is satisfied when plaintiffs allege actual misuse or actual access to personal data); *see also Desue v. 20/20 Eye Care Network, Inc.*, No. 21-cv-61275, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022) (acknowledging that for settlement purposes, "all named Plaintiffs have standing," even if they have not suffered "actual misuse"). There is no requirement that Article III standing be proved with evidentiary support at the

settlement approval stage. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d at 1261 n.8.

Here, all Plaintiffs have standing because, like the Plaintiffs in *Desue*, their Private Information was allegedly impacted in the Data Breach when an unauthorized actor gained access to files containing information pertaining to BioPlus patients. S.A., 2. Following the Court's guidance in its September 14, 2023 Order, Plaintiffs and BioPlus agreed to amend the Settlement Agreement to update the Class definition so that it only includes Plaintiffs and Class Members whose Private Information was impacted in the Data Incident. *Id.*

Because all Plaintiffs and Class Members had sensitive personal or health information impacted in the breach, they have all suffered alleged injuries akin to an invasion of privacy. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete. Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.") (internal citation omitted). The application of this privacy theory to the data breach context was recently confirmed by the Second Circuit, which held that:

> Like the Supreme Court in *TransUnion*, we have no trouble concluding that Bohnak's alleged harm is sufficiently concrete to support her claims for damages. Similar to the publication of misleading information about some of the plaintiffs in *TransUnion*, the core injury here—exposure of Bohnak's private PII to unauthorized third parties—bears some relationship to a well-established common-law analog: public disclosure of private facts.

> Bohnak's position is thus similar to that of the 1,853 class members who had standing in *TransUnion* based on the publication of misleading information to third parties without regard to whether the third parties used the information to cause additional harm.

*Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285–86 (2d Cir. 2023) (internal citation omitted); *see also Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919, 2017 WL 4390260, at *3 (N.D. Ga. Oct. 3, 2017) ("A violation of the right to privacy necessarily entails an injury.... [T]he victim suffers a harm as soon as their privacy is violated. That remains true whether or not the tortfeasor does anything with the information collected ...."). This injury is consistent for all Class Members.

Moreover, in this case, the Court previously held that all Plaintiffs adequately stated a claim for breach of implied contract. ECF No. 59 at 7-8 ("BioPlus next argues there is no implied contract between Plaintiffs and BioPlus. But where a patient hands over personal information to a health services provider, courts have found that course of conduct sufficient to imply a contract even where a written one does not exist. Here, because Plaintiffs' doctors and insurance companies supplied their PII to BioPlus so Plaintiffs could use BioPlus's services, they have sufficiently alleged an implied contract.") (internal and external citations omitted).

It is well established that the lost benefit of a bargain is sufficient to confer standing. *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1205 (S.D. Fla. 2022) ("[W]here plaintiffs allege that 'there was an explicit or implicit contract for data security, that plaintiffs placed value on that data security, and that [d]efendants failed to meet their representations about data

security,' courts have consistently held these allegations sufficient to allege injuries in fact.") (internal citation omitted); *see also Kostka v. Dickey's Barbecue Rests., Inc.*, No. 3:20-CV-03424-K, 2022 WL 16821685, at *4 (N.D. Tex. Oct. 14, 2022) ("The Court finds that the Settling Plaintiffs have properly alleged Article III standing for all potential class members on the basis of their breach-of-an-implied-contract claim."), *report & recommendation adopted*, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022). This injury applies to both SSN and Non-SSN Class Members.

### B. Certification of the Settlement Class is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that common questions of law or fact predominate over any individual issues and a showing that the class treatment is the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

### 1. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). The Eleventh Circuit holds that class sizes exceeding 40 are typically sufficient to satisfy this requirement. *Cox v. Am. Cast*

12

*Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Plaintiffs should make reasonable estimates with support as to the size of the proposed class. *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383 (S.D. Fla. 2015). However, "a plaintiff need not show the precise number of members in the class." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). Here, the joinder of approximately 350,000 Settlement Class Members would certainly be impracticable, and thus, the numerosity element is satisfied. Moreover, the SSN Class totaling 130,438 individuals and the Non-SSN Class totaling 218,759 are sufficiently numerous to satisfy the numerosity requirement on their own.

### 2. Commonality.

"The threshold for commonality under Rule 23(a)(2) is not high." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). Rule 23(a)(2) simply requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Courts in this Circuit have previously addressed this requirement in the context of cybersecurity incident class actions and found it satisfied. *See, e.g., Desue*, 2022 WL 17477004, at *4; *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *11 (N.D. Ga. Mar. 17, 2020).

Here, as in the cases cited above, the claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' Private Information. Resolution of that inquiry revolves around evidence that does not vary from Class Member to Class Member, and so can be fairly resolved—at least for purposes of settlement—for all Settlement Class Members at once. Indeed, the SSN Class Members and Non-SSN Class Members each had their Private Information impacted in the Data Incident.

### 3. Typicality.

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. The commonality and typicality analyses often overlap as they are both focused on "whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000). As in *Desue* and *Equifax*, Plaintiffs' claims are typical of other class members because they are based on the same legal theories and underlying events. *See In re Equifax*, 2020 WL 256132, at *12; *Desue*, 2022 WL 17477004, at *5. Here, there is a nexus between the Non-SSN Class Representative's claims and other Non-SSN Class Members' claims in that they each include the same Private Information that was impacted in the Data Breach. Similarly, the SSN Class Representatives' claims are typical of other SSN Class Members' claims in that they each include the same Private Information, including Social Security numbers,

that was impacted in the Data Breach. All Class Members' claims involve Defendant's alleged failure to protect their sensitive personal or health information.

### 4. Adequacy of Representation.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the adequacy requirement is met, we ask: '(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *In re Equifax*, 999 F.3d at 1275 (citation omitted). Here, Plaintiffs have no conflicts with the Settlement Class and have actively participated in this case despite not receiving any special treatment. *See generally* S.A.; Coates Decl., ¶ 14. Class Representative Hullett is a Non-SSN Class Member and thereby is an adequate representative of the Non-SSN Class. S.A. ¶ 1.7. Representatives Gilbert, Bryan, White, Gatz, Grader, Swanson, Gabbard, and Dunn are SSN Class Members and are adequate representatives for the SSN Class. S.A. ¶ 1.10. Plaintiffs have also adequately prosecuted this action through Class Counsel, which is comprised of attorneys with significant experience litigating class and other complex cases, especially in the data privacy context. *See* Coates Decl., ¶ 15.

### 5. Certification under Rule 23(b)(3) is appropriate.

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires that

"questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *In re Equifax*, 999 F.3d at 1275. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not Inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial.").

### a. *Common questions of law and fact predominate.*

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. This case is no different from *Desue*, in which the Southern District of Florida held that,

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

*Desue*, 2022 WL 17477004, at *5. Indeed, the answers to the key questions in this case are not tangential or theoretical such that the litigation will not be advanced

16

by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Settlement Class Member in that their private information was impacted in the Data Incident. All Non-SSN Class Members and SSN-Class Members had their respective private information impacted in the Data Incident. Common factual and legal questions predominate based on BioPlus's alleged failure to safeguard all Class Members' Private Information from unauthorized access during the Data Incident. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

### b. Class Treatment is Superior.

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3). A superiority analysis pursuant to rule 23(b)(3) involves an examination of "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted). Florida courts have previously recognized the particular superiority of the class mechanism in the context of litigation stemming from a data breach. *See, e.g., Desue*, 2022 WL 17477004, at *5 (finding class treatment superior for settlement purposes).

The Settlement Agreement provides all Settlement Class Members with robust relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object to it or to request exclusion. S.A. ¶¶ 4-5. Moreover, adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

### C. Preliminary Approval of Settlement is Appropriate

After it has been determined that certification of the Settlement Class is appropriate, the Court must then determine whether the Settlement Agreement is worthy of preliminary approval of providing notice to the class. Courts in this Circuit have held that preliminary approval is appropriate "where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 661 (internal quotations omitted).

Other courts have looked to the *Bennett* factors to determine whether preliminary approval is appropriate. The *Bennett* factors include (1) the likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of the

proceedings at which the settlement was achieved. *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Settlement warrants preliminary approval under either approach.

### 1. The proposed Settlement was reached after serious, informed, and arm's-length negotiations.

First, arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. In this case, the Settlement was the result of intensive, arm's-length negotiations over the course of several months between experienced attorneys with vast experience handling data breach class action cases. Coates Decl., ¶¶ 11-12, 15. There is no evidence that any collusion or illegality existed during settlement negotiations. *See id.* The Parties' Counsel support the Settlement as fair and reasonable, and all certify that it was reached at arm's-length. *See id.*

### 2. The proposed Settlement falls within the range of reasonableness and has no obvious deficiencies, and thus, warrants issuance of notice and a hearing on final approval of settlement.

Although Plaintiffs believe that the claims asserted in the Class Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Defendant poses significant risks that make any recovery for the Settlement Class uncertain. The Settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the litigation. Despite the risks involved with further litigation, the Settlement

Agreement provides outstanding benefits as Settlement Class Members have the ability to claim significant settlement benefits. Moreover, there are no grounds to doubt the fairness of the Settlement or other obvious deficiencies, such as unduly preferred treatment of Plaintiffs or excessive attorney compensation. Plaintiffs, like all Class Members, will receive benefits consistent with the Settlement Agreement. They will not seek payment of any incentive or service awards.

### 3. The *Bennett* factors support preliminary approval.

Although typically a consideration at the final approval stage, here, the *Bennett* factors still point towards preliminary approval. *First*, the benefits of settlement outweigh the risk of trial given the substantial relief that Settlement Class Members will be afforded.

*Second* and *Third*, the Settlement is within the range of possible recoveries and is fair, adequate, and reasonable. The second and third *Bennett* factors are often considered together. *See Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013). In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that Plaintiffs could recover at trial and combine this with an analysis of Plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007). Here, SSN Class Members have the ability to claim documented losses up to $7,500, and Non-SSN Class Members (given the less risk that they face) have the ability to claim documented losses up

to $750. All Settlement Class Members are also entitled to compensation for time spent dealing with consequences of the Data Incident, and SSN Class Members are entitled to additional *pro rata* payments (projected to be approximately $50 each) from the Non-SSN Settlement Fund. S.A. ¶¶ 2.1-2.3; Coates Decl., ¶¶ 7-9. Accordingly, the Settlement is reasonable, especially considering that it avoids the potential contingencies of continued litigation, and the size of the breach, itself.

*Fourth,* continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. A settlement is beneficial to all parties, including the Court. *See Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493).

*Fifth*, there has not been an opposition to the Settlement. This factor is better considered after notice has been provided to Settlement Class Members and they are given the opportunity to object. *See Columbus Drywall*, 258 F.R.D. at 561. Thus, this factor need not be considered at this stage.

*Sixth*, despite resolving at an early stage, Plaintiffs have sufficient information to evaluate the merits and negotiate a fair, adequate and reasonable settlement. Courts have approved settlements at early stages of the litigation. *See, e.g., Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement with little discovery); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684

F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). This case has been thoroughly investigated by counsel experienced in data breach litigation. Coates Decl., ¶¶ 11-12. Moreover, Class Counsel's informal exchange of discovery and mediation under the supervision of a mediator has ensured a fair, reasonable, and adequate settlement worthy of preliminary approval. *See id.*

Accordingly, the Court should find that the proposed Settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

### D. The Court Should Appoint the Proposed Class Representatives, Class Counsel, and Settlement Administrator

Plaintiffs seek to be appointed as Class Representatives for the Class. As discussed above, Plaintiffs have cooperated with counsel, provided informal discovery, and assisted in the preparation of the numerous complaints filed in this action. Moreover, Plaintiffs are committed to continuing to vigorously prosecute this case, including overseeing the Notice Plan, and defending the Settlement Agreement against any objectors, all the way through final approval. Because Plaintiffs are adequate, the Court should appoint them as class representatives. Second, for the reasons previously discussed with respect to adequacy of representation, the Court should designate John A. Yanchunis of Morgan & Morgan Complex Litigation Group; Terence R. Coates and Dylan J. Gould of Markovits, Stock & DeMarco, LLC; Nicholas A. Migliaccio of Migliaccio & Rathod,

LLP; Joseph M. Lyon of The Lyon Firm, LLC; Gary E. Mason of Mason LLP; J. Gerard Stranch, IV, of Stranch, Jennings & Garvey, PLLC; and M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, APC, as Class Counsel.

Finally, the parties have agreed that Kroll shall act as Settlement Administrator. Kroll and its principals have a long history of successful settlement administrations in class actions. Kroll Decl., ¶ 2.

### E. The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved

Under Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Parties negotiated the form of the Notice with the aid of a professional notice provider, Kroll. The Notice will be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from

Defendant's records, and through databases tracking nationwide addresses and address changes. In addition, Kroll will administer the Settlement Website containing relevant information about the Settlement. Kroll Decl., ¶ 12.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice Plan satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees of no more than $733,333.33, which represents one-third (1/3) of the combined maximum value of the Settlement Funds ($2,200,000), plus reimbursement of litigation expenses up to $15,000. Coates Decl., ¶ 10. The Notice Plan complies with Fed. R. Civ. P. 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the Settlement, including the definition of the Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding the payment of proposed Class Counsel fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Notice Plan and Notices are designed to be the best practicable under the circumstances, apprises Settlement Class Members of the

pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. *See Agnone v. Camden Cnty.*, No. 2:14-cv-00024-LGW-BKE, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (class notice mailed directly to settlement class members was the best practicable and satisfied due process). Thus, the Notice Plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### F. The Court Should Approve a Schedule Leading Up to the Final Approval Hearing

Plaintiffs request that the Court set a schedule, leading up to a Final Approval Hearing, that would include, *inter alia*, deadlines for notice to Settlement Class Members, for Settlement Class Members to object to the Settlement, to opt out of the Settlement, and to make claims under the Settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses.[1] At the Final Approval Hearing, the Court should hear all evidence and argument necessary to make its final evaluation of the Settlement. *See* Fed. R. Civ. P. 23(e)(2). Proponents of the Settlement may offer argument in support of final approval. Additionally, Settlement Class Members who properly object to the Settlement may be heard at this hearing. The Court should determine through the Final Approval Hearing whether the Settlement will be approved.

<u>**CONCLUSION**</u>

For these reasons, Plaintiffs respectfully request that the Court enter an Order Granting Plaintiffs' Motion for Preliminary Approval.

---

[1] A proposed timeline is attached to the Settlement Agreement as Exhibit D.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Plaintiffs have met and conferred with Defendant, which does not oppose

the relief requested in this Motion.

<u>/s/ Terence R. Coates</u>
Terence R. Coates (pro hac vice)
Dylan J. Gould (pro hac vice)
**MARKOVITS, STOCK
& DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Tel.: (513) 651-3700
tcoates@msdlegal.com
dgould@msdlegal.com

John A. Yanchunis
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com

M. Anderson Berry
Gregory Haroutunian
**CLAYEO C. ARNOLD,
A PROFESSIONAL
CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
aberry@justice4you.com
gharoutunian@justice4you.com

Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com

Joseph M. Lyon
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, Ohio 45208
Tel.: (513) 381-2333
jlyon@thelyonfirm.com

Gary E. Mason
**MASON LLP**
5301 Wisconsin Avenue, NW. Suite 305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

## <u>Certificate of Service</u>

I hereby certify that on September 29, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Terence R. Coates*
Terence R. Coates
