## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| **BONNIE GILBERT, et al., on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | Case No. 6:21-cv-2158-RBD-DCI |
| **v.** | |
| **BIOPLUS SPECIALTY PHARMACY SERVICES, LLC,** | |
| **Defendant.** | |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

Under Fed. R. Civ. P. 23(e), Plaintiffs respectfully move this Court for Final Approval of the Class Action Settlement because the Settlement is fair, reasonable, and adequate. In support thereof, Plaintiffs rely upon the accompanying Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of John A. Yanchunis in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Yanchunis Decl.") attached as **Exhibit 1**; the Declaration of Kroll Settlement Administration, LLC on Notice and Settlement Administration ("Kroll Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted; Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Class Counsel's Expenses, records, pleadings, and papers filed in this action; and such other evidence or

1

argument that may be presented to the Court at or before the Final Approval Hearing.[1] For the Court's convenience, a Proposed Order Granting Final Approval to the Class Action Settlement is attached as **Exhibit 3**.

## **MEMORANDUM IN SUPPORT**

Plaintiffs respectfully request that the Court grant final approval of this class action settlement as it is fair, reasonable, and adequate.

## I.    INTRODUCTION

Plaintiffs and the preliminarily approved Settlement Class they represent, with Class Counsel's assistance, reached a nationwide class action settlement with Defendant, BioPlus Specialty Pharmacy ("Defendant" or "BioPlus"), that provides proportional relief through a hybrid benefit structure to the roughly 350,000 members of the Settlement Class. Notably, all Class Members were eligible to submit claims for cash payments to reimburse the time and money that Class Members allegedly lost as a result of the Data Incident. In addition to the reimbursement for lost time and money, SSN Class Members were eligible to submit claims for pro rata cash benefits from the Settlement Fund. These benefits exceed or are similar to those made available in analogous cases.

After preliminary approval, the Settlement Administrator, Kroll Settlement Administration, LLC ("Kroll"), executed a successful notice campaign that resulted in the submission of 6,991 claims for monetary benefits, eleven (11) opt outs, and

---

[1] Unless otherwise stated, all defined terms are given the same meaning as in the Settlement Agreement.

zero (0) objections. Kroll Decl. ¶¶ 23, 25-26. This roughly 2% claim rate is similar to or better than the results of several other recent data breach settlements approved by courts in this Circuit and elsewhere.

Because the Settlement is fair, adequate, and reasonable, and the Settlement Administrator has successfully executed the approved notice plan, the Court should (1) grant final approval of the proposed class action settlement, (2) grant the previously filed motion for reimbursement of Class Counsel's fees and expenses, and (3) approve the payment of Kroll's expenses, projected to be $263,247.58.[2]

## II.    PROCEDURAL HISTORY

On April 26, 2023, the parties filed a Notice of Settlement. Doc. 64. Plaintiffs then moved for the Court to: (1) certify the settlement class; (2) preliminarily approve the settlement; (3) appoint the proposed class representatives, class counsel, and settlement administrator; (4) approve the proposed form and manner of notice to the class as reasonable; and (5) approve a schedule leading up to a final approval hearing. Doc. 82. Plaintiffs' motion included a copy of the Second Amended Settlement Agreement and Release (the "Second Amended Settlement Agreement"). Doc. 82-1. On February 1, 2024, Magistrate Judge Irick issued a report and recommendation ("R&R"). Doc. 83. The R&R held that "Plaintiffs have

---

[2] *See* Declaration of John A. Yanchunis in Support of Motion for Attorneys' Fees and Litigation Expenses (Doc 90-1 at ¶ 10) ("To date, Defendant has paid Kroll, the appointed Settlement Administrator, a retainer invoice of $122.483.00. Kroll recently informed Class Counsel that it estimates total administrative costs in this matter of $263,247.58.").

adequately demonstrated that the settlement should be preliminarily approved with the exception of ... recommended revisions to the Short and Long Form Notices." *Id.* at 40.

Neither party filed objections to the R&R. On February 28, 2024, Plaintiffs filed revised notices in accordance with the R&R. Doc. 87. Shortly after, on March 5, 2024, the Court adopted the R&R. Doc. 88. On June 5, 2024, Plaintiffs filed a motion for attorneys' fees and reimbursement of Class Counsel's expenses. Doc. 90. Specifically, the motion requested fees of $424,128.96 and the reimbursement of expenses totaling $15,000. *Id.* On July 8, 2024, the Court ordered that counsel representing Plaintiffs in this case submit billing records in support of their motion for reimbursement of fees and expenses. Doc. 95. The individual firms representing Plaintiffs in this matter complied with that order. Docs. 97-105. Thereafter, on August 5, the Magistrate Judge issued an R&R recommending that (1) the Motion be granted; (2) that Class Counsel's proposed attorney fee of $424,128.96 is reasonable; and (3) that the request for reimbursement of litigation expenses in the amount of $15,000.00 is reasonable. Doc. 107.

On August 8, 2024, the Parties filed a joint motion to amend the notice program and stay the final approval hearing for 30 days (Doc. 108), which the Court granted on August 13, 2024. Doc. 109. Thereafter, Kroll finalized effecting notice to Class Members pursuant to the terms agreed upon in the motion for preliminary approval, and tendered notice to the final 594 Settlement Class Members.

### III.    TERMS OF THE SETTLMENT AGREEMENT

The Settlement Class is defined as "all persons whose personal information was impacted in the Data Incident." Doc. 82-1 at 13. The Settlement Class specifically excludes: (i) BioPlus and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contender* to any such charge. *Id*.

The class is further divided into two sub-classes. The first group is referred to as "Claims-Made Settlement Class Members" or "Non-SSN Class Members" (Non-SSN Class Members) who include:

> approximately 218,750 Settlement Class Members whose personal information was impacted in the Data Incident, and whose Social Security numbers were not impacted in the Data Incident. The Claims-Made Settlement Class Members are eligible to submit a claim under the Claims-Made Benefits. Class Representative Crystal Hullett is a Non-SSN Class Member. Non-SSN Class Members comprise approximately 62.65% of the 349,188 total Class Members.

*Id*. at 6. A separate settlement fund for this group is described as follows:

> Settlement benefits. . . available to the Claims-Made Settlement Class Members. The Claims-Made Benefits will be funded by BioPlus in an amount not to exceed $1,175,000, inclusive of (i) all Valid Claims for Settlement benefits made under ¶ 2.1; (ii) 62.65% of the Notice and Settlement Administration Costs (defined below) incurred in the administration of both Claims-Made and Common Fund Benefits, including all taxes owed by the Claims-Made Benefits and Common Fund; and (iii) any attorneys' fees not to exceed 1/3 of the Non-SSN

Settlement Fund, and 62.65% of the total costs and expenses incurred by Class Counsel, as approved by the Court.

*Id.*

Through this Non-SSN constructive fund, Non-SSN Class Members may claim (1) compensation of $25 per hour for up to two hours of time spent dealing with issues related to the Data Incident and (2) reimbursement of documented out of pocket expenses or losses up to $750. Doc. 82 at 6. And BioPlus will pay all approved claims, allocated attorneys' fees and expenses, and allocated settlement administration expenses up to a cap of $1,175,000. *Id.*

The other subclass is referred to as "Common-Fund Settlement Class Members" or "SSN Class Members" (SSN Class Members) who include:

> approximately 130,438 Settlement Class Members whose personal information, including Social Security numbers, was impacted in the Data Incident. Common- Fund Settlement Class Members are eligible to submit a claim under the Common Fund. Class Representatives Bonnie Gilbert, Wendy Bryan, Patricia White, David Gatz, Lori Grader, Daryl Swanson, Stephen Gabbard, and Alicia Dunn are SSN Class Members. SSN Class Members comprise approximately 37.35% of the total 349,188 Class Members.

Doc. 82-1 at 7-8. The "Common Fund" or "SSN Settlement Fund" is defined as:

> a non-reversionary common fund to be funded by BioPlus in the amount of $1,025,000, which will be allocated as follows (i) 37.35% of the Notice and Settlement Administration Costs (defined below) incurred in the administration of both Claims-Made and Common Fund Benefits, including all taxes owed by the Claims-Made Benefits and Common Fund; (ii) any attorneys' fees not to exceed 1/3 of the SSN Settlement Fund, and 37.35% of the total costs and expenses incurred by Class Counsel, as approved by the Court; (iii) all Valid Claims for Settlement benefits made under ¶ 2.2.

*Id.* at 7. From the SSN Settlement Fund, SSN Class Members were able to claim (1) compensation of $25 per hour for up to three hours of time spent dealing with issues related to the Data Incident; (2) reimbursement of documented out of pocket expenses or losses up to $7,500; and (3) a pro rata distribution of funds remaining in the SSN Settlement Fund (which was projected to be approximately $50 per SSN Class Member). Doc. 82 at 5.

Plaintiffs and Settlement Class Members who did not opt-out of the settlement have agreed to release BioPlus and all of its agents, parents, subsidiaries, and affiliates from any liability "relating to, concerning or arising out of the Data Incident and alleged theft of other personal information or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation." S.A. ¶ 1.24; *see also id.* ¶¶ 1.35, 7.1. This is a mutual release, with Defendant agreeing to release Plaintiffs and Settlement Class Members from claims related to this action as well. *Id.* ¶ 7.2.

## IV.   NOTICE PROGRAM AND CLAIMS PROCESS

Kroll, the Court-appointed Settlement Administrator, implemented the Notice program consistent with the Court's Order Granting Preliminary Approval of Class Action Settlement. In total, Kroll has mailed 268,786 approved notices and emailed an additional 103,136. Kroll Decl. ¶ 19. Kroll also activated the Settlement Website and posted important case information on the Settlement Website. As of October 22, 2024, the Settlement Website has received 19,433 views. *Id.* ¶ 7. Furthermore, Kroll established the toll-free line for the Settlement. *Id.* ¶ 8. The

toll-free line fielded 2,136 calls, and 1,158 callers have been connected to live operators. *Id.*

The deadline to opt out or object to the settlement for most Settlement Class Members was June 18, 2024, and the deadline to file a claim was July 18, 2024.[3] As of October 22, 2024, there have been 6,991 claims for benefits, 11 opt outs, and zero objections. Kroll Decl. ¶¶ 23, 25-26. The total 6,991 claims represent a claim rate of approximately 2%. Of these 6,991 claims, 6,532 were for benefits from the SSN Fund, and 256 were for benefits from the Non-SSN Fund. *Id.* ¶ 23. To date, Kroll has determined that there are 6,788 potential valid claims, 14 potential entirely deficient claims, and 189 potential rejected claims. *Id.* ¶ 23. Kroll is still in the process of reviewing and validating Claim Forms. Based on the number of claims received to date, the effectuation of notice was successful.

## V.    THE LEGAL STANDARD FOR FINAL APPROVAL

Class actions may be settled only upon the court's determination that the settlement is "fair, reasonable, and adequate" after considering various factors. Fed. R. Civ. P. 23(e)(2). The Eleventh Circuit has established the six *Bennett* factors to evaluate whether to grant final approval of class action settlement: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point below the range of possible recovery at which a settlement is fair, adequate and

---

[3] Following a miscommunication with Kroll, Class Counsel and counsel for BioPlus agreed to extend the deadline for the 594 Settlement Class Members who received supplemental Postcard Notices to opt out or object on or before October 21, 2024. *See* Kroll Decl. ¶ 15. Class Counsel apologies for this miscommunication and will update the Court at the final approval hearing if any exclusion requests or objections are received after this deadline.

reasonable; (4) the complexity expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

Federal Rule 23(e)(2) also identifies several factors that must be considered when determining whether a class action settlement is fair, reasonable, and adequate: "whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats all class members equitably relative to each over. Fed. R. Civ. P. 23(e)(2)(A-D). In considering whether the settlement relief provided is sufficient, courts must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(C)(i)-(iv). In considering these factors, "[t]here is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation of being most complex." *Ass'n for Disabled Ams., Inc., v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).

## VI.  THE COURT SHOULD GRANT FINAL APPROVAL

The dual settlement structure for approximately 349,188 Class Members, which includes several cash payment options, is fair, reasonable, and adequate

when analyzed under the relevant factors for determining whether to grant final approval of class action settlement.

### A. The *Bennett* Factors Weigh in Favor of Final Approval

#### 1. The Benefits of the Settlement Outweigh the Risks of Future Litigation

The cash payments to Class Members—providing relief for several types of alleged injury—represents a strong recovery for Class Members against the uncertain backdrop of continued litigation. Were litigation to continue, Plaintiffs would need to almost immediately successfully petition the Court for class certification and survive a motion for summary judgment before having their day in court for a possible trial. Continued litigation of this matter would bring uncertain results and risks. A Settlement now—on terms Plaintiffs were able to forge—compares well against the inherent risk of future litigation, particularly in data breach class actions. Accordingly, this factor supports final approval.

#### 2. The Settlement Compares Favorably to Other Common Fund Data Breach Settlements

The hybrid settlement structure in this case provides proportional benefits to the members of the Settlement Class and compares well with other recent data privacy cases. For example, the theoretical value of the SSN Fund is approximately $7.86 per SSN Class Member. The chart below compares the amount recovered in

other class action data breach settlements involving the alleged theft of data that includes Social Security numbers:[4]

| Case | Non-Reversionary Fund Amount | Class Size | Per Person |
|------|------------------------------|-----------|------------|
| *Cochran v. Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.) | $5,000,000 | 3,825,200 | $1.31 |
| *Thomsen v. Morley Companies, Inc.*, No. 1:22-cv-10271 (E.D. Mich.) | $4,300,000 | 694,679 | $6.19 |
| *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| ***Gilbert v. BioPlus Specialty Pharm. Servs., LLC***, **No. 6:21-cv-2158 (M.D. Fla.)** | **$1,025,000** | **130,438** | **$7.86** |
| *Julien v. Cash Express, LLC*, No. 2022-cv-221 (Putnam Cnty., Tenn.) | $850,000 | 106,000 | $8.02 |
| *Tucker v. Marietta Area Health Care*, No. 2:22-CV-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |

Yanchunis Decl. ¶ 9.

As this chart demonstrates, the per person value of the SSN Settlement Fund is similar to that of non-reversionary funds reached in several other data breach actions. Moreover, after deducting proportional fees and expenses from the SSN Settlement Fund, there will be approximately $442,649.64 remaining to distribute

---

[4] Counsel recognize that different types of impacted data and other factors may impact the settlement terms of every data security incident class action.

amongst the SSN Class Members who submitted valid claims. This results in an actual payment to each SSN Class Member submitting a valid claim of approximately $73.15.

The relief afforded to the roughly 218,750 Non-SSN Class Members compares favorably to other data breach settlements as well. The chart below compares the amount recovered in other class action data breach settlements resolved on a claims made or reversionary common fund basis.

| Case | Available Benefits |
|------|-------------------|
| *Devine v. Health Aid of Ohio, Inc.*, No. CV-21-948117 (Cuyahoga County, Ohio Court of Common Pleas) | Dual settlement structure providing monetary and non-monetary benefits to SSN Class Members, but only non-monetary compensation to Non-SSN Class Members |
| ***Gilbert v. BioPlus Specialty Pharm. Servs., LLC,*** **No. 6:21-cv-2158 (M.D. Fla.)** | **Non-SSN Class Members eligible for reimbursement of up to $750 each for out-of-pocket losses and expenses, including compensation for lost time of $25 per hour (up to 2 hours)** |

Yanchunis Decl. ¶ 11.

### 3. Continued Litigation Would be Time Consuming and Expensive

Data breach class actions are complex and remain unpredictable. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-cv-1386, 2021 WL 3773414, at *12 (M.D. Fla. Aug. 25, 2021) (noting data breach class actions present "serious risks" due, in part, to "the ever-developing law surrounding data breach cases"); *In re Citrix Data Breach Litig.*, No. 19-61350-CIV, 2021 WL 2410651, at *3 (S.D. Fla. Jun 11, 2021) ("Data breach cases in particular present unique challenges with respect to issues like causation, certification, and damages."); *In re Arby's Rest. Grp., Inc.*

*Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June 3, 2019) ("Further, data breach litigation involves the application of unsettled law with disparate outcomes across states and circuits."). This case is no exception. The pursuit of nationwide claims and relief presented complex issues of law and fact. The duration, complexity, and expense of continued litigation weighs in favor of final approval.

### 4. The Class Supports the Settlement

The Class has responded favorably to this Settlement with 6,991 claims for monetary benefits. The roughly 2% claim rate exceeds the result of other data breach settlements that courts in this Circuit and elsewhere have approved. *See, e.g., Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (The claims rate is also within an acceptable range. There were 26,165 claim form submissions (excluding denied and duplicates) out of a Class of 3,976,023 individuals, or a 0.66% claims rate."); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving data breach settlement with a claims rate of roughly 0.23%).

The 11 opt outs and zero objections are also strong indicators of support.[5] *See Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017, 2002 WL 1162422, at

---

[5] The eleven opt outs represent only about 0.003% of the Settlement Class.

*7 (S.D. Fla. May 7, 2002) ("The fact that no objections have been filed strongly favors approval of the settlement."); *accord Desue*, 2023 WL 4420348, at *9 ("Fifteen (15) individuals requested exclusion (0.0004%) and no Class Members objected to the Settlement. This 'strongly favors' final approval."); *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000) ("[T]he fact that not one class member objected after receiving the best notice possible under the circumstances to weigh heavily in favor of approving the settlement agreement.").

Given the lack of objections, relatively low number of exclusion requests, and a claims rate of roughly 2%, this factor weighs in favor of final approval as the Class has responded favorably to the Settlement and its cash benefits.

### 5. Plaintiffs had Sufficient Information to Thoroughly Evaluate the Merits of the Case and Negotiate a Favorable Settlement

Plaintiffs were well informed when negotiating the resolution of this Action. *See* Yanchunis Decl. ¶ 4. Plaintiffs submitted a list of settlement discovery requests to Defendant for the purpose of gaining sufficient information to make a well-informed demand. In response, Defendant produced documents and relevant information that allowed Plaintiffs to gain insight into the Data Incident, the size of the class, the data elements potentially impacted by the Data Incident, and that BioPlus had insurance coverage for Plaintiffs' claims. *Id.* ¶ 5. This information gave Plaintiffs the ability to analyze their and the Class's claims and to understand the potential for class-wide damages. *Id.* This too weighs in favor of final approval.

## B. The Rule 23(e) Factors Support Final Approval

### 1. The Class was Adequately Represented

The first step in finally approving a class action settlement under Rule 23(e)(2) involves two questions: "(1) whether the [class representatives] have interests antagonistic to the interests of other class members; and (2) whether the proposed class's counsel has the necessary qualification and experience to lead the litigation." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 555 (N.D. Ga. 2007). For purposes of settlement, Plaintiffs are adequate representatives for the Class because they asserted claims against Defendant due to their Private Information being impacted in the Data Incident – the same Data Incident that also impacted the Private Information of the Class. Accordingly, for these purposes they have the same claims and same cause of her injuries as the rest of the Class Members. Furthermore, Plaintiffs have stayed apprised of the case's progress and have remained engaged in this Litigation by reviewing the allegations in the Complaint and reviewing and approving the terms of the Settlement Agreement. *See* Yanchunis Decl. ¶ 4; *see also, e.g.,* Doc. 104 (identifying several telephone calls with Plaintiffs Bonnie Gilbert and Stephen Gabbard).

Class Counsel are appropriately qualified to lead this Litigation on behalf of Plaintiffs and the Class. Class Counsel have represented plaintiffs in state and federal courts across the county in data privacy class actions and have achieved many recent favorable results for plaintiffs. *See* Yanchunis Decl. ¶ 2. Class Counsel's skill in procuring tangible cash benefits for Class Members demonstrates

that Class Counsel are sufficiently qualified to serve as Class Counsel in this Litigation.

## 2. The Settlement was Negotiated at Arm's Length

The Settlement was negotiated over several months and required multiple mediation sessions under the guidance of a qualified neutral. *See* Yanchunis Decl. ¶ 6. Settlement was reached only after receiving details on the class size and details on the data elements impacted by the Data Incident. *Id.* The Parties' negotiations included discussion over the appropriate settlement structure for this case, ultimately landing on a dual hybrid structure that provides proportional benefits to the members of the Class. *Id.* ¶¶ 4-6. These facts demonstrate that the Settlement was negotiated at arm's length with the assistance of counsel for each side who are experienced in handling data privacy class actions.

## 3. The Settlement Provides Class Members with Significant Cash Benefits

As discussed above, the Settlement provides Class Members with the opportunity to receive meaningful cash benefits. Notably, SSN Class Members can receive pro rata payments from the SSN Settlement Fund, in addition to compensation of lost time and out-of-pocket expenses. Although the value of individual pro rata payments from the SSN Settlement Fund was originally projected to be $50, based on the number of claims to date, the amount of pro rata cash payments to each SSN Class Member who submitted a valid claim will be at least $73. And although Non-SSN Class Members are not entitled to pro rata cash payments, they will still be eligible to receive compensation for lost time up to $50

and reimbursement of out-of-pocket expenses and losses up to $750. As discussed above, this exceeds or is similar to the compensation provided by other claims made settlements.

### 4. The Complexity, Expense, and Risk of Future Litigation

"Class actions are inherently complex to prosecute because the legal and factual issues are complicated and uncertain in outcome." *Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-616677-CIV, 2008 WL 649124, at *15 (S.D. Fla. Jan. 31, 2008). Data breach class are complex and carry significant risk in that some cases have failed at the dismissal or class certification stages.[6] *See, e.g.*, *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017) (dismissing a nationwide class action for a data breach at Noodles & Co, holding Colorado's economic loss rule prohibited tort damages caused by the data breach); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, MDL No. 09-2046, 2012 WL 896256 (S.D. Tex. Mar. 14, 2012) (after three rounds of dismissal motions, dismissing among other claims, negligence), *rev'd sub nom.*, *Lone Star Nat'l Bank N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 424 (5th Cir. 2013) (concluding that New Jersey's economic loss doctrine could not be applied at dismissal stage); *In re TJX Cos. Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83 (D. Mass. 2007) (dismissing claims for negligence and negligence per se), *aff'd*, 564 F.3d 489 (1st Cir. 2009); *In re TJX*, 246 F.R.D. at 400

---

[6] Understanding that there is overlap between *Bennett* factors and the Rule 23(e) factors relating to the complexity, expense, and risks of future litigation, Plaintiffs incorporates their arguments above under Section V.B.1.c. above to avoid repetition.

(denying class certification because individual issues of reliance, causation, and damages predominated).

### 5. The Terms Relating to Attorneys' Fees are Reasonable

As discussed at length in the motion for fees and expenses, the requested attorneys' fees and expenses are reasonable. For the sake of brevity, Plaintiffs will not repeat that analysis here, other than to point out that the fees sought by Class Counsel represent only a percentage of the money that Defendant will actually pay under the Settlement, rather than the theoretical value of the SSN and Non-SSN Funds combined. This is reasonable and weighs in favor of final approval.

### 6. No Other Agreements Exist under Rule 23(e)(3)

The Settlement Agreement and attachments are the only agreements impacting the Settlement. Accordingly, there are no additional agreements for the Court to consider. This factor also supports final approval.

### 7. Class Members are Treated Equitably

Each Class Member is eligible to submit a claim for one or more cash settlement benefits. Furthermore, all Class Members were afforded ample opportunity to opt-out or object to the Settlement. *See McWhorter v. Ocwen Loan Servicing LLC*, No. 2:15-cv-01831, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (noting that class members' ability to exclude themselves from a settlement indicates equitable treatment of class members and supports final approval). Although SSN Class Members are entitled to superior benefits, this merely recognizes the greater risk of harm they face.

## VII.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court's R&R thoroughly analyzed the Rule 23(a) and (b) factors. The facts underlying the Court's conclusions in its thorough and well-reasoned R&R have not changed. *See* Doc. 83 at 6-25. Absent an objection, new material facts, or a change in law, courts typically refrain from disturbing class certification at the final approval stage. *See, e.g., Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *6 ("Nothing has occurred in the interim to disturb the Court's conclusion that this case meets the prerequisites of Rule 23(a) and (b)(3), and certification for settlement purposes is appropriate."); *In re Advoc. Aurora Health Pixel Litig.*, No. 22-CV-1253-JPS, 2024 WL 3357730, at *5 (E.D. Wis. July 10, 2024) ("The Court has no independent basis to question whether final certification of the class as previously defined or appointment of Plaintiffs as class representatives … is appropriate. Accordingly, the Court does not disturb its earlier finding that the settlement class in this matter meets the requirements of Rule 23(a) and (b) and that Plaintiffs are appropriate class representatives.").

### A. The Rule 23(a) Requirements are Satisfied

Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements are satisfied for purposes of this Settlement.

*Numerosity*: The numerosity requirement is generally a "low hurdle." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009). The roughly 350,000 Class Members—130,438 in the SSN Class and 218,759 from the Non-SSN Class— easily clear this hurdle. See Doc. 83 at 19.

*Commonality*: For the purposes of Rule 23(a)(2), a single common question of law or fact is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). Although the exact claim or statutory violation need not be the same for all class members, "there [must] be at least one issue whose resolution will affect all or a significant number of the putative class members." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014) (*per curiam*) (citation omitted). Here, the named Plaintiffs have identified common questions of law or fact that satisfy the commonality requirement. *See* Doc. 83 at 19-20. Notably, the named Plaintiffs and the putative Class Members' claims are all based on the contention that Defendant's security did not protect the Class Members' Private Information. Resolution of whether the BioPlus's security environment was adequate would not vary amongst the Class Members. Moreover, all Class Members were notified of the Data Incident and Plaintiffs contend that Defendant breached an implied contract, violated the FDUTPA, and acted with negligence. Doc. 60. So, the common questions of law are whether Defendant (1) violated FDUTPA, (2) entered into an implied contract and subsequently breached the agreements, and (3) failed to prevent this foreseeable harm. Resolving these issues would affect all Class Members.

*Typicality*: The typicality requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). Here, Plaintiffs' and putative Class Members' claims are typical of each other. *See* Doc. 83 at 20-21.

Notably, all claims involve Defendant's alleged failure to protect Private
Information, and every named or putative Class Member received notice of the
Data Incident. There is a nexus between the Non-SSN Class Representatives'
claims and the other Non-SSN Class Members' claims as each includes the same
Private Information that was impacted. The same nexus exists between the SSN
Class Representatives' claims and SSN Class Members' claims. *Id*.

*Adequacy*: Plaintiffs and Class Counsel have adequately represented the
Class. *See* Doc. 83 at 21-23. Following preliminary approval, Class Counsel
oversaw a successful notice and claims process that, if approved, will provide
meaningful compensation to thousands of Class Members. Accordingly, Rule
23(a)'s adequacy requirement is satisfied for purposes of this settlement.

### B. The Rule 23(b)(3) Requirements are Satisfied

Final class certification is also appropriate because Plaintiff and the Class
meet Rule 23(b)(3)'s predominance and superiority requirements for purposes of
this settlement. *See* Doc. 83 at 23-25. Rule 23(b)(3) requires that "questions of law
or fact common to class members predominate over any questions affecting only
individual members, and that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy." *In re Equifax Inc. Customer
Data Security Breach Litig*., 999 F.3d 1247, 1275 (11th Cir. 2021). The Court need
not consider whether the case would be manageable as a class action, as referenced
in Rule 23(b)(3)(D), because that inquiry is unnecessary to certify a settlement
class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with

a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.") (internal citation omitted).

Here, the central issue is whether Defendant violated FDUTPA, breached an implied contract, and engaged in negligent behavior by its failure to protect the Private Information from unauthorized access during the Data Incident. All Non-SSN Class Members and SSN Class Members had their respective Private Information impacted in the Data Incident. Doc. 82-1 at 13. Defendant's alleged action or inaction is the same for every Class Member's claim. There are also common factual and legal questions with respect to whether the named Plaintiffs and putative Class Members suffered loss or a significant risk of harm because of Defendant's actions. Furthermore, there is still no evidence to suggest that individual issues predominate in this action.

A class action is superior because it is the most efficient method for resolving the claims of all Plaintiffs and Class Members related to the same incident. *See* Doc. 83 at 24-25. The Second Amended Settlement Agreement provides all Class Members with relief and a well-defined administrative procedure to ensure due process. Doc. 82 at 17. Following the Court's R&R, the parties agreed to revised settlement notices, which were successfully distributed by Kroll. *See* Docs. 87, 87-1, 87-2, 87-3; *see also* Kroll Decl. ¶¶ 13-15. The manageability of this case as a class action is demonstrated by the fact that Kroll was able to successfully deliver notice to roughly 95.9% of the Settlement Class, which complies with the Federal Judicial

Center's guidance that notice should reach 70% to 95% of class members to satisfy the requirements of Rule 23(c)(2)(B) and due process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022); Kroll Decl. ¶ 19. This settlement is the most efficient and effective way to adjudicate thousands of claims based on common questions of law and fact.

Thus, the Court should certify the claims of Plaintiffs and Class Members for settlement purposes under Rule 23(b)(3).

## CONCLUSION

For the reasons addressed herein, Plaintiffs and Class Counsel respectfully ask the Court to enter an Order Granting Final Approval of Class Action Settlement.

*/s/ John A. Yanchunis*
John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Tel.: (813) 223-5505
jyanchunis@ForThePeople.com

Terence R. Coates (pro hac vice)
Dylan J. Gould (pro hac vice)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Tel.: (513) 651-3700
tcoates@msdlegal.com
dgould@msdlegal.com

M. Anderson Berry
Gregory Haroutunian
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL**
**CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
aberry@justice4you.com
gharoutunian@justice4you.com

Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H Street, N.E.
Washington, D.C. 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com

Joseph M. Lyon
**THE LYON FIRM, LLC**
2754 Erie Avenue
Cincinnati, Ohio 45208
Tel.: (513) 381-2333
jlyon@thelyonfirm.com

Gary E. Mason
**MASON LLP**
5301 Wisconsin Avenue, NW. Suite
305
Washington, DC 20016
Phone: (202) 429-2290
gmason@masonllp.com

## **Certificate of Service**

I hereby certify that on October 22, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ John A. Yanchunis